Good morning, Your Honors. May it please the Court, Mandy Lee for student E.M. And I'd like to reserve a couple of minutes for rebuttal. Could you keep your voice a little bit louder, please? Yes. E.M. is a disabled child under Section 504 in the IDEA for two categories of eligibility, other health-impaired and specific learning disability. These are the two eligibility categories at issue here. However, the district court below committed legal error by failing to apply the other health-impaired standard at all in his decision. By other health-impaired, you mean the ADHD? The ADHD as well as the central auditory processing disorder. In the underlying complaint, we specifically pled that the administrative law judge reformulated our issues and ignored others. In the motion for summary judgment, we notified the court that one of the issues that the ALJ completely ignored was applying the other health-impairment category of eligibility to the central auditory processing disorder. And actually what the court does is in the order he seems to recognize that we are claiming that central auditory processing standing on its own would have qualified E.M. under a category of eligibility. It's just that what he does is he borrows the 22.5 point discrepancy standard from the specific learning disability eligibility, rather than applying the other health-impaired standard, which requires none of the discrepancy analysis. And that analysis requires looking at a child who has an acute health impairment that is not temporary in nature, that manifests with limited vitality and alertness. And there is absolutely no question that this child was distractible for all of the years at the issue. In fact, so distractible that he had to be placed at the front of the classroom and had to have interventions such as small group instruction in order to pay attention. And the testimony and the evidence that was provided suggested that actually proved that he could not complete any work without a one-to-one aide standing next to him. That is how distractible the so-called highly capable child was. You're trying your case again. The issue on appeal is what the district court did wrong and why it did wrong. Now, the district court adopted the findings of the ALJ, right? That's correct. Why did the – what's the scope of review? Abuse of discretion, right? De novo review. It would be de novo review for this issue because the court misapplied the law to the facts. And because there was a legal error in it – De novo review as to issues of law. Abuse of discretion as to issues of fact, correct? That's correct. Now, proceed to tell me, if you can, what errors of law were committed by the district court. So the error that I was talking about was that the district court did not utilize the correct standard under the OHI. What he does is he says that – Why don't you tell us what the OHI, which is an acronym used for the first time now, means? Actually, we define other health impaired in our briefs, and we also define it for the judge below. And what it means is a child who has an acute health problem that manifests with limited vitality, alertness, and strength, and as a result of those manifestations requires special education. And what we argue to the court was that this child qualified, and as well, this was fully briefed before the administrative law judge, that this child qualified under both specific learning disability as well as other health impairment because he had a central auditory processing disorder as well as an attention deficit disorder, specifically because of his attention difficulties. But the ALJ found against you by finding that there wasn't a necessary discrepancy between learning ability and achievement ability as set forth in the code, 22.5. Now, do you claim that that was an error by the ALJ repeated by the U.S. – by the district court? That is one error, correct. If you are applying the specific learning disability standard, then a 22.5 point discrepancy is one of the indicia, although it's not required, it is one of the indicia of a need for special education. The other eligibility category which we plead in our complaint, our federal complaint, is that the ALJ ignored some of our issues by reformulating them. One of those issues was that this child qualified under other health impaired. That's the ADHD and the centralized word processing disorder. No. We also allege that he qualified under central auditory processing disorder, and that is pled in our first due process complaint. It is also stated in our motion for summary judgment before the district court below. And what the – apparently what the federal court does is on one of the last – close to the last page when he's talking about the attention deficit disorder, to highlight the error that he committed, he states improperly, well, the reason why even if you could prove attention difficulties, you wouldn't be able to show the 22.5 point discrepancy. That demonstrates his error of law, because there is no 22.5 point discrepancy required in order to consider a child eligible for either attention deficit disorder or central auditory processing disorder. The only requirement is that the child have limited vitality or alertness due to a medical condition. In this case, it is undisputed that the only – that the only individual who conducted a full auditory processing disorder, the only credentialed audiologist, was Dr. Ruth Casper, and she confirmed that this child had an auditory processing disorder. I read your brief. It was pretty substantial, 65 pages. And the argument you're making right now boils down to basically one page in the brief. Well, there are many issues in this case, Your Honor. I know. But I may have not – I may not have appreciated the significance of this issue. So are you arguing on the facts or are you making a legal argument? Well, I'm making the – I'm arguing that the court misapplied the law with respect to the standard for attention – for attentional issues, as well as whether he could have considered central auditory processing dis-issues. Are you saying – are you saying that you raised the auditory processing issue before the ALJ and he refused to consider it? Correct. Is that what you're saying? And it's pled in our federal complaint. It specifically states that the ALJ incorrectly reformulated our issues and ignored others. Okay. So if I go back now and look at his decision, I'm going to find what you're telling me. What you're going to find is that, as we argued, he ignored the auditory processing issue altogether. When you say ignored, he didn't address it? He didn't address auditory processing at all, and then he clearly ignores our arguments about other health impaired. Okay. And then what about the district judge? The district court judge – it appears to me that what the district court judge is he tries to isolate the two disorders. So he gets the argument. He gets that the child might be – the district court below – excuse me – it got that the argument – the argument that the child might, standing alone, qualify under auditory processing. It's why he parses those out instead of making it part of the specific learning disability analysis. That's why he specifically separates those in his order. But what he does is he applies the 22-and-a-half point discrepancy requirement instead of the other health impairment requirement. I see. I have a question. You eventually got your client found eligible. Was that through a compromise with the school board? No. That was through cajoling the school board and asking them repeatedly to continue to test this child, because we – So just – it was not a compromise. It was they finally found that he was eligible. That's correct. For the two – for two areas that we – Let me say that, did you introduce that on the remand of the ALJ? Yes, we did, Your Honor. And you made a motion to introduce it, and he refused it. And is there ruling where he rejects it? He never makes mention of it. He never makes mention of it. All right. But now – so how do we know you introduced it? Because it's part of the record, and we also state it in our – in our briefs before this Court. Okay. When we're checking on you, if we look at the record, we'll find there that you did introduce that and he paid no attention to it. That's correct. And we also introduced Dr. – all of the evidence that we produced pretty much for the Federal District Court judge, we produced on remand to the administrative law judge, including Dr. Kaufman's declarations, including two subsequent assessments, Your Honor. There wasn't just the school district assessment that determined him eligible, but the – there was an independent assessment by Dr. Cheryl Jaffs. Both of these assessments I would ask the Court to deeply look at, review the evidence that was at issue in this case, and draw the same conclusion that we were arguing the entire time. Did any of the information on this auditory processing issue, was it developed after the relevant dates and periods, or was it all available at the time of the – it was available and had been developed and was raised? Yes, Your Honor. So what's the little dispute about over evidence that was – you wanted to introduce it before the district court that was new? Well, the new evidence that we were asking the Court that we were trying to introduce were the two assessments that Judge Noonan points out. One is Cheryl Jaff's assessment, which was an independent assessment which corroborated the previous eligibility that we were arguing. And the second was the district's – the school district's own assessment, which, no surprise, determined that he was eligible under specific learning disability and auditory processing. And auditory processing is not a light switch. I mean, you kind of have it or you don't. And auditory processing, as even the district's own expert could not refute that this child had an auditory processing disorder, and the reason is because she had never met him. The only person who – which was Jody Winzelberg. The only person who conducted an auditory processing assessment in a soundproof room, which even the district's own expert testified that that was the only way you could truly diagnose an auditory processing disorder, was Dr. Rickett. Did the district court deal with this exact issue at page 25, line 19 of the order by saying, However, the record indicates that at least one auditory processing test was administered by Ms. Vial during the initial assessment. At the due process hearing, Ms. Vial testified that E.M. did not appear to suffer from auditory processing difficulties because he started tasks immediately when given oral instructions. So you're saying that the district court didn't consider this issue? No. What I said, Judge Baio, was that the district court didn't apply the right standard. What the district court – what he does is he applies the 22-and-a-half point discrepancy. Now, to the auditory processing. Now, you brought up the TAFs. That's an important piece of this puzzle. And let me address the TAFs. I'm reading from page 25 through 27 of the order. I don't see any mention or reference to the judge deciding the centralized word processing disorder based on the 22.5 discrepancy between achievement and ability. Sure. I'll point it out to you. He specifically says on page 27, Moreover, the failure to show that a severe discrepancy existed during the period in question renders the presence of any disorder – any disorder – What are you reading? Page 27, line 19. Any disorder irrelevant under the IDEA. He's talking there about a decision by LHA to strike claim for ADDADHD. That's right. But he says any disorder. And he also does this again, and I'll locate it for you if you give me one second. He also does this again when he starts the review of the 22.5 point discrepancy, and he says auditory processing. He does not say specific learning disability. So when he starts this analysis of the 22.5 point discrepancy, he specifically states auditory processing, not learning disability. Where is that? What page? Sorry, I didn't highlight that, but it is in the order. Let me ask you this. What relief are you seeking? The relief that we're seeking is compensatory educational services to remediate the years of failures that EM was facing while he was in the school district. What does that mean? That means that under the IDEA, compensatory educational services means that they provide additional services, such as tutoring, goals and objectives. You mean you want that as part of an injunction going forward? Or do you want money to pay for it? I believe if the child could receive the services directly, he's now in 11th grade, this child desperately needs these services. So your answer is you want us to order the services be provided through the school district? Or if the court sees fit, they are entitled to order relief of monetary damages to be used for services to compensate the harm that was caused to the child. That would be up to the district court, though, right? You would send it back to the district court to figure out what to do. That has happened in many cases, Your Honor. Judge Newnan had a question. Are there any monetary damages or attorney fees that you want? There are attorney fees at issue under the IDEA. There is an attorney fee provision, Your Honor. In addition, I think one of the issues that was also a problem with the district court's order is the idea that the fact that the child passed from grade to grade was dispositive of the fact that he was doing fine academically. And then the court cites Turali. And the problem with that is it's an incomplete citation. The court in the United States Supreme Court rally said, in some circumstances, passing from grade to grade might be an issue of a child who is not in need of a faith. And in the WH v. Clovis Unified School District case, which is a case that we highlight and we believe is in all fours with this case, the judge from the Eastern District does a very nice job, almost factually identical to this case in terms of saying, well, the problem with that is none of the work, the grade production that the district is so heavily relying on, is the product of this child's own efforts. The district needs to decide, were they providing him with a lot of interventions or not? And because they were providing him with so many interventions, how could those grades reflect the product of his own work? And, in fact, the only reason why this child was retained, and the district court states, Your Honor, that, well, yes, I understand that he was retained and that in fifth grade he was not faring well academically, but he was passed. What's missing from that statement is that the only reason he wasn't retained is because the parent signed a waiver so that the child would be moved on to the sixth grade. And that is a critical component, because despite the fact that the court found that these interventions were working, by the time of the end of fifth grade, this child was doing poorly academically, was still not proficient in a state standardized testing, and was also at risk of retention. Okay. I've let you go over your time. Thank you, Your Honor. I really appreciate it. Thank you. Good morning. May it please the Court. I'm Kimberly Smith, representing Defendant Nappelli, Pajaro Unified School District. I'm going to focus on the procedural issues that were addressed in the case. Can I ask you to keep your voice up? Yes. I apologize. I'm going to focus on the procedural questions that were raised in the opening argument. I think one of the difficulties for the school district in this case is that this case has evolved over time, and issues keep cropping up, which we consider to be new issues. The IDEA is an administrative law statute, and the student was required to go to a due process hearing, present their issues, get a decision, and essentially everything from there forward is an appellate review, first by the district court and then by this court, to determine if there was a rational application of the law to the facts. Could we start with the question I asked first? Yes. About the final admission of the school district that he was eligible. Wasn't there an error in the AALJ not considering that? Absolutely not was it an error. Children over time are often reconsidered for special education. They have new assessments. Here where we're talking about the key analysis being on a specific learning disability, I think over time as school gets harder, different skills are in place. It's very possible that a child will not qualify in one year, as he did here, not qualify in the fourth grade, and then in the sixth grade he would. That's true, but isn't it relevant? If you were making a judgment, you'd like to know, well, how is it staying now? And then that casts light on the earlier decisions. Well, I would disagree that it does. I mean, how is it relevant? I do. Because under the Adams case, all that the administrative law judge is supposed to look at is what decision was made at the time of the hearing. So you're talking about test results two years in the future. We're saying at the time of the hearing, the judge was to look at the test data before him and consider the testimony of the school district officials and whatever experts and witnesses that the student wanted to put on. And that should specifically provide for hearing no evidence. To some degree. I think it's — To some degree. It says no evidence may be admitted. Well, and we would be of the position that testing two years in the future is not relevant to whether or not the school district made a proper determination in the 2004-2005 year. And related to that is whether the other health impairment eligibility category was ever at issue. We contend that because there was the determination by the ALJ that it had not been properly pled, evidence wasn't put on. So plaintiff argues that they added it to their federal court complaint. But at that point, they have not exhausted their administrative remedy requirement to have a full hearing on that issue. They did not put on any evidence in the due process proceeding to support these OHI eligibility category. And for that reason, the district didn't. And so the ALJ and then the district court after that said that this was not properly teed up as an issue for this case. The evidence wasn't presented. And so it's not an issue to be decided. So that's why we don't see that there's an error in failing to consider ADHD, quote, unquote, evidence, because it wasn't presented. And on the auditory processing disorder, I think there's a little apples and oranges situation here. We've got the SLV category, which as its second — Not so quick on the acronyms. Okay. Under the specific learning disability category, which in our contention was the sole issue of eligibility beginning back in due process. So for the specific learning disability, you have the components of the discrepancy, the 22.5 difference. Sorry? There's no rush. There's no rush. The 22.5 point difference between the intellectual assessments and the ability assessments. And then after that, you need to find a processing disorder. And what the student put forward in their evidence in due process was that this was an auditory processing disorder, which is the inability of the brain to process auditory information. What I hear today is that there's a separate auditory defect that's more medical that should be classifying this student under the other health impairment. But again, I go back to the fact that that was never an issue in this case. It was not being considered in due process. The district was never allowed to counter any evidence. And we don't even think that the student put evidence on in that case. So as it was stated earlier, yes, the ALJ and the district court did not consider the evidence of auditory processing disorder. But that's because when they were looking at the specific learning disability category, they already saw a failure at the first prong, which was no severe discrepancy between the IQ test and the achievement test. So when I say apples and oranges, I say the only proper consideration of auditory processing in this case was in relation to the specific learning disability category eligibility. When did the issue of attention deficit disorder and centralized auditory processing disorder, which your colleague has brought up in opening argument, first come up in this case? She raised the possibility of the ADHD before the due process hearing started. The ALJ said you haven't done it timely. We're not going to permit it to go forward. But as I put in my brief, What about the auditory? I don't believe that the phrase or the, I don't know what you want to call it, the diagnosis of central auditory processing disorder as an OHI concept has been brought up until recently. When we were in the district court, the focus was on the ADHD. She tried to put in some evidence of some medical diagnoses on that. Say it again. In the district court, the focus was on what? Well, in the district court, the focus was always whether there's eligibility under specific learning disability. Plaintiff tried to bring in new evidence, not before the ALJ, on ADHD. There were a couple notes from doctors trying to make that diagnosis. That was excluded by the district court judge, we say properly, because OHI category was not part of this case. There had not been an exhaustion of administrative remedies on whether or not this student qualified under other health impairment. So we went forward with one eligibility category at issue. And that's also why I spent some time in my brief. Specific learning disability as to which the 22.5% range is relevant. Correct. That range is not relevant either as to the ADHD OHI. Now I'm starting to use the acronym. I know we do it. What was the centralized processing disorder? Right. I mean, as OAH sounds, other health impairment, it's more of a medical issue. Do they have some kind of physical or cognitive medical issue that is affecting their ability to learn for which they would require special education? The ALJ was in error in not allowing proof of ADHD and centralized auditory disorder by amendment at that time. I think that he would have allowed an amendment, but the student didn't seek it. The student in their pre-hearing. The ALJ said you haven't properly raised it. There was no motion to amend it. Exactly. And everybody went forward without addressing that issue at hearing. Let me ask, you had to file a request for a due process hearing, correct? And in that request, you have to set out the issues that they're going to? Right. What you think is wrong and what remedies you think need. What were the issues that were listed in that request for a hearing? It was a failure to find eligibility under the specific learning disability, because that's when the IEP team, the individualized education program team that gets together and looks at assessment results, made a determination. That's what they were looking at. Okay. They showed up at the hearing, and they apparently tried to at least raise the HDH, whatever it is. Yeah. Well, I think as my opposing counsel stated, she briefed it. So we go through a whole hearing. There's closing briefs submitted to the ALJ. She discusses ADHD, and he says, wait, I told you that's not an issue. I'm not going to rule on it. It wasn't properly before me for hearing. And the centralized. Yeah. I don't feel it was characterized that as an OHI category. In my recollection of this case, that's even a newer attempt at them to try and bring OHI in. I recall the ADHD. Did that happen at the district court level? I feel like it's happening here for the first time, honestly. I feel like because when you look at the supplemental evidence that was submitted by the plaintiff trying to get it in to broaden the issues, it was mostly ADHD evidence, as well as the assessment by Mijok that was referred to, that was more to SLD. It was just kind of a, again, looking at the IQ and achievement. When I look at her red brief, she does talk about her blue brief. She does raise some of this stuff on that. And she's citing transcripts in the ‑‑ Yeah. I'm not saying that there weren't witnesses that talked about auditory processing. They did, and they had to because under the specific learning disability examination that was being done by the ALJ, he needed to consider that because that's strong, too, after the 22.5 points. So he's looking at that. If he had decided the discrepancy was there, he'd have to look at the auditory. On page 36 of her blue brief, she states EM's eligibility due to a processing disorder. Right. And to me, that's a mischaracterization. It's a very short concept. But what I'm saying is that I'm not saying auditory processing disorder was not discussed at the hearing, but it was discussed in the specific learning disability context. We were not considering OHI. It's a different examination. Okay. And so the way that the evidence was presented, there were assessments that included ‑‑ there were two types of assessments, the assessment on the discrepancy between intellect and ability, and then if the ALJ had found the 22.5 points existed, which we dispute that it was there, he would then have to find a processing disorder. And so at the hearing, the processing disorder that the student was offering was auditory processing, but not in an OHI context, only as a second prong under the SLD analysis. I see. And so that's what I'm saying. What I hear through the appeal process is an attempt by the student to recharacterize that evidence and bring in this OHI category as the basis for eligibility, when I'm saying that was not exhausted at the administrative level and is not properly before this court, was not properly before the district court. And I think the district court judge properly said that, said ADHD, which like in my recollection I was saying is what we were focusing on before, was never properly handled in due process. So the court's saying I'm just going to look at this SLD analysis and rule on whether or not the ALJ made a proper determination there. Well, now, what is the school district resisting in the suit? If she wanted, you'd have to provide more services than you are now providing. Is that right? Right. There would be, as it was described, it's considered compensatory education. How much of a financial burden is that? Well, it depends. Someone has to make a determination as what those services would look like. Someone would need to make a determination, and usually it's an administrative law judge. Does he need 5 hours of tutoring? Does he need 500 hours of tutoring? Does he need something else? So someone would have to evaluate what's the harm. Well, our position is we didn't make any mistakes, so. And are you also resisting attorney's fees? Only to the extent that if we believe we, if we're the prevailing party, we're not going to owe them. The student has to prevail on some issue to obtain attorney's fees in this case. Let me just give you a perspective, which you may have not. It seems to me this kind of dispute is different from a battle between two corporations over money. You're talking about the future of a child in terms of education, and you're representing the group that's responsible for that education. So I think the spirit is a little different from defending every penny. Of course, you don't want to spend money foolishly, but on the other hand, there are good reasons when you're looking at the child in your system who's now been found eligible to think about whether the child shouldn't have been found eligible earlier. And I wonder if you would be willing to think of mediating the dispute. Well, we've made several attempts at every level. I'm sorry? We have made several attempts at every level to mediate. But I take issue only with the idea that we somehow don't find a student eligible and then ignore that child. I think the record is replete with how the district followed the student's progress, worked with him, worked with his family, gave him special seating because under the IDEA, it's not just whether you qualify. You need to ‑‑ there's that third prong of needing special education. Teachers are very competent to sometimes help students without what might be considered formal special education, such as a special classroom. I think that's right, and I see the district change its position. But I guess the one answer that you gave me that I didn't quite understand is why you thought the later finding of eligibility wasn't relative. I think if you think of any disease, if a doctor says, oh, here's this terrible disease, the natural thought is, well, was it there earlier? And if there was some real disability, maybe it was there earlier. I know people change as they grow up, but it certainly seems to me relevant. Well, the only thing I would add to that is what we're looking at is a series of assessments that took place during his fourth grade year. At the time, the law was very kind of rigid in using this numeric comparison of tests, and so I'm here to defend my district employees who administered the tests, looked at him holistically, looked at how he was doing in school, were trying other interventions, and just said, he just doesn't qualify. It doesn't mean they were saying we're not going to help him do his best. It just meant that under the IDEA, which has criteria of what constitutes a disability, he didn't qualify at the time. And you don't retest him every week. A new request for assessment came later, and for whatever reason, he was found eligible at that time. Looking at this case, which is about what my employees did during a particular time period, I saw that everything happened right and that the evaluation happened right, and that's why we're seeking to affirm the decision. Okay. Thank you. Roberts. Thank you. I appreciate your argument. You went over your time, but I'll give you one minute. Thank you, Your Honor. I'd like to point the question. Can I ask you one question? Yes. I had the impression from reading your papers that you were seeking additional relief in the sense of compensatory judgment, compensatory damages for the period of time 2004 to 2008 during which you were seeking a FAPE and you didn't get it. Yes, Your Honor. And how would you compute those compensatory damages? To whom would the compensatory damages be paid? The compensatory damages, if they're paid, are provided to the parent directly. The parent directly. Correct. And what is the range or what is the basis of compensatory damages? Emotional distress? Or are you seeking special damages in the sense that the parent put out money for special education during this period of time? Unfortunately, the guidance on how to rule on compensatory educational services is guided by the law, which is very vague in this area, and it's a determination, as Ms. Smith said, that experts would have to review where the child is at and how this harm impacted him in the classroom. Here's what I have in mind. Let's reduce ourselves a little bit away from the specialized language of IDEA. Yes, Your Honor. You're seeking general and special damages for compensatory damages. That's correct. Special damages in the sense that your parent put out some money for special schooling, yes or no? Yes. And also compensatory damages in that there was mental distress during this period of time when he saw the child wasn't getting the kind of treatment he thought he should get. Well, if you're making a comparative to what the IDEA remedies are, then I would say yes within the confines of what the IDEA allows. Well, I didn't think the IDEA allowed for general mental distress damages. It does not. When they talk about compensatory damages under IDEA, it's to compensate the child for his lack of an appropriate education. That's correct. And not so much in just giving money, but in terms of money that's directed to providing him services. And that's what I said earlier. Isn't that right? That's correct. That's why I said confined by the box. It's hard to carry over this. So you're asking, so if you were to prevail here and to go back down and you would want the district court or somebody to determine what services he needs to make up for all that he lost. That's correct. In terms of educational achievement. That is correct, Your Honor. Thank you. And I just wanted to point out in our record on page 73, ER 476, which is where you can find our due process complaint, the original. Right. The first remedy that we asked for specifically to be found eligible for special education for an impairment due to his auditory processing under the category of other health impaired. That is in the due process complaint. And, Your Honor, I'm sorry, Judge Bea, that I did not have the page for you before. But in ER 19, which is the underlying district court's order, you will see a section called disability determination C1. And the judge specifically states that plaintiff contends that EM suffers from an auditory processing disorder. And then the judge goes on to apply the specific learning disability analysis. So that's the page that I was referring to earlier. I just wanted to address one last thing quickly, if I could, Your Honors. Please. This idea of the Adams rule applying. Actually, the district court below does this analysis as well, because the ALJ in the second remand order makes an admission and says, well, looking back in hindsight, this child, based on his distractibility, his failing grades, his inability to be retained with all of their students, that this child could have been suspected of having a disability. And what the federal court judge does in a footnote is he applies the hindsight rule and then reframes the judge's wording. All right. Which doesn't apply here. All right. Thank you so much, Your Honor. Okay. Bye now. And that ends our session for the day and for the week. And good luck to all of you. Good-bye. Good-bye. Farewell. This is the end of the session. And adjourned.
judges: Noonan, Paez, Bea